Hartfield v. State.

(Division B. Nov. 9, 1936.)

[170 So. 531. No. 32101.]

Jesse **M. Byrd**, of Leakesville, and **Currie & Currie**, of Hattiesburg, for appellant.

Webb M. Mize, Assistant Attorney-General, for the state.

**Griffith, J.,** delivered the opinion of the court.

Appellant was indicted for the alleged murder of Al Lawrence, and on the trial was convicted of manslaughter. The main facts are that on the morning of the homicide, which occurred late that afternoon, the deceased went to the home of Maggie Bonney, at which home Bernice Hartfield was temporarily residing. Deceased found appellant present at this place, and seemed to be displeased because of that fact. Deceased departed, but about noon returned, armed with a shotgun, and, as the aggressor, entered into a dangerous altercation with appellant. The neighbors hastened to the

scene, disarmed the deceased, and persuaded him to leave. Later, about five o'clock, deceased returned, at which time Maggie Bonney and the other permanent members of the household happened to be absent, but were yet within sight of the house, in which only Bernice Hartfield and appellant remained.

When deceased approached the house, he passed by the gate which opened in front of the entrance to the house, and at a point beyond climbed the fence, thence jumped upon the west end of the front porch, went past the first of two doors opening to the porch and to the second door, broke this door open, and entered the east front bedroom. When the woman saw the approach of the deceased, she shut and fastened the door, and called to the appellant that deceased was coming. Whereupon appellant seized a shotgun belonging to the house and always kept there, and which was standing in a corner, and went immediately to a place near the northwest corner of the west bedroom. There was a doorway between these two bedrooms, but there was no door in this opening. In it, however, there was suspended a curtain of a flimsy material so thin in texture as to be transparent.

When deceased entered the east bedroom, he appeared to be in search of something or of some one; and, according to appellant, he was armed with an iron rod about ten inches long and approximately two inches in diameter. The proof discloses that such an instrument was found at the point where deceased fell. In his apparent search deceased passed the doorway between the two bedrooms and went towards the dining room next adjoining in the rear. He immediately retraced his steps, however, and came to the doorway separating the two bedrooms, and looking through the thin curtain, discovered appellant in the other room, whereupon he said: "Now I have got you; I told you I was going to get you, and I got you." Appellant's version is that thereupon deceased advanced upon him, and appellant

warned him not to come further; that deceased disregarded the warning, but continued to advance, and appellant shot the deceased, who then managed to get out of the house and outside the front gate, where he fell and soon bled to death.

The shot was fired from the northwest corner of the west bedroom, through the curtain aforesaid, and into the left side of the left leg of deceased, the shot going entirely through that leg and into the right leg. There was a bed in the east room in which deceased was standing when the shot struck him, and the foot of this bed was approximately three or four feet from the curtained doorway, according to the diagram introduced in evidence and authenticated by the witnesses. The force and operation of the shot was such as to blow out a portion of the left leg of deceased and the flesh fell upon the foot of this bed and was described by the witnesses as looking like a portion of a hamburger. When appellant was challenged on cross-examination for an explanation as to how it could be that deceased was advancing upon him when the undisputed evidence was that the shot was into the other room, through the curtain, and into the left side of deceased, the deceased being so close to the bed and away from the curtain that flesh from the wound was deposited on the bed, appellant replied that deceased was advancing sideways.

Appellant has earnestly urged upon us that the court should have granted the peremptory instruction of not guilty requested by him; but it is apparent from the above statement of facts, which were so well supported in the whole evidence that the jury had a right to believe and act thereon, that the court was not in error in refusing the said instruction; and, were there no reversible error in the granted instructions, we would affirm the verdict and judgment of manslaughter. And we say this for this reason: We may concede for the purpose of the present discussion that appellant shot de-

ceased without malice and under the bona fide belief and apprehension that it was necessary for him to do so in order to prevent the deceased from inflicting death or great bodily harm upon him. But this in itself is not enough. The true rule is expressed in an instruction approved by this court in a late case, Ransom v. State, 149 Miss. 262, 267, 115 So. 208, 210, that instruction being in the following words:

"The court instructs the jury, for the state, that, to make a homicide justifiable on the grounds of self-defense, the danger to the slayer must be either actual, present, and urgent, or the slayer must have reasonable grounds to apprehend a design on the part of the deceased to kill him, or to do him some great bodily harm, and, in addition to this, that there was imminent danger of such design being accomplished; and hence mere fear, apprehension, or belief, however sincerely entertained by one person, that another designs to take his life or to do him some great bodily harm, and yet this will not justify the former in taking the life of the latter party. A party may have in apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the jury may determine the reasonableness of the ground upon which he acted."

It is not required under this established rule that the accused shall know that the danger is actual and is immediate and imminent; nor, on the other hand, is it sufficient to a complete defense that immediate and imminent danger would be apprehended only by a confirmed coward, or by one who, for the time being, is unduly frightened out of his wits. The apprehension of such danger must be real and such as would or should, under the circumstances, be entertained by a reasonably well-disposed man of average prudence; and whether the accused has, in a particular case, measured up to that standard of conduct is a question to be submitted to, and decided by, the jury, as all such questions are sub-

mitted to the jury in cases of alleged wrong, whether criminal or civil. And, when a charge of murder is submitted to the jury and the jury is of the opinion from all the evidence that the accused "killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in order to prevent the deceased from inflicting death or great bodily harm upon him, then the jury might, under proper instructions, be warranted in returning a verdict of manslaughter." O'Banner v. State (Miss.), 169 So. 845, citing Williams v. State, 127 Miss. 851, 90 So. 705. Thus it is that we have said that, except for erroneous instructions granted to the state, we would permit the verdict of manslaughter in this case to stand.

There are three erroneous instructions in this record granted at the request of the state. They deal, it is true, primarily with the issue of murder; and, ordinarily, erroneous instructions upon that issue will not reverse a manslaughter verdict, for the reason that, the jury having failed to convict of murder, the accused is presumed not to have been prejudiced by any instructions relating to that degree of crime. Gregory v. State, 152 Miss. 133, 142, 118 So. 906; Joyce v. State (Miss.), 169 So. 759. But this rule, for manifest reasons, cannot be applied to murder instructions which (1) are erroneous and (2) are so drawn as to be well capable of the interpretation by an unskilled jury that thereunder the justification of self-defense is wholly cut off, not only as to murder but as to manslaughter as well. Self-defense is a defense to any form of prosecution for homicide; and, as respects that point, we cannot say with confidence that the erroneous instructions which we shall discuss were harmless; nor are they cured by instructions granted to the defendant, for in the respect aforesaid they would be contradictory and therefore not curative.

We are not justified in copying those instructions at length herein, nor can we refer to them by numbers be-

cause they are not numbered in the transcript; but they are the first, third, and sixth in their order in the transcript. The first is long and much involved in its language; it opens with the suggestion that deceased was a trespasser and that appellant had no right to kill him to prevent the assumed trespass. This proposition had no proper place in the case; and in that regard the instruction was capable of no legitimate use, although it was usable to befuddle the jury in argument. The instruction followed with the proposition that a person who arms himself with a deadly weapon and enters into a difficulty with the intention to use the weapon unnecessarily in overcoming his antagonist is not entitled to the right of self-defense, leaving out the element that the person who so arms himself must be the aggressor in the difficulty, or rather so obscuring that element in the involvment of the language that in practical effect it is omitted. And with this we look to the sixth instruction, which introduces the suggestion that the jury might find from the evidence that the deceased had abandoned his attitude as an aggressor after he entered the house, whereupon the appellant would thence be the aggressor, which would then take the jury back to the proposition erroneously stated in the other instructions that the accused would have no right of self-defense, when there is not a word of testimony which can reasonably be used as the basis of any reasonable theory that the appellant was ever the aggressor, or had armed himself with aggressive intent or purpose, or that the deceased was other than the sole aggressor from beginning to the end. And these are to be looked to in connection with the third instruction, which is not erroneous in a proper case, but is here, and, while not reversible error, ordinarily, where a manslaughter verdict has been returned, is harmfully erroneous here because of the use which could be made of it in connection with the two erroneous instructions already mentioned. This third instruction told the jury

"that malice is implied by law from the nature and character of the weapon used, and the deliberate use of a deadly weapon in a difficulty, and not in necessary self-defense is in law, evidence of malice."

We have repeatedly held that, where all the facts and circumstances surrounding a homicide are fully disclosed by the evidence, as in this case, it is error to instruct the jury that the deliberate use of a deadly weapon is evidence of malice, or that the law presumes malice from such use. When the evidence shows all the facts and circumstances, presumptions must yield to the evidence, and in consequence entirely disappear. This is the rule in civil cases, and all the more must be upheld in criminal cases. We have recently reaffirmed the attitude of this court on this question in Busby v. State, 170 So. 140.

Reversed and remanded.