SMITH, Presiding Justice,
for the Court:
I. V. Perkins, indicted and tried upon a charge of murder, was convicted of manslaughter in the Circuit Court of Warren County and sentenced to six years imprisonment. He has appealed, assigning several grounds for reversal.
It is first argued that the evidence was not sufficient to support the verdict and that the verdict is contrary to law.
There were certain conflicts in the testimony of witnesses given at the trial, but that version of the circumstances relating to the homicide which supports the verdict and is based upon evidence is substantially as follows:
In the early morning hours of December 5, 1976, one Ronnie Warren was shot and *1390 killed by appellant at the El Morocco Club in Vicksburg. A fight had occurred earlier between Perkins’ daughter and one Barbara Griffin at the Dewdrop Club, an establishment located across the street from the El Morocco. The women had fought over Warren. In the fight Perkins’ daughter was bested and, going home, she encountered her father who sought unsuccessfully to find out from her what had happened. Being unable to learn anything from his daughter he went on to the El Morocco Club for the purpose of finding out from Warren what trouble his daughter had been into. Entering the El Morocco Perkins observed Warren at the cigarette machine talking to one Davis. Warren, when asked by Perkins if he had been dating Perkins’ daughter, replied in the affirmative. At this, Perkins told Warren not to “say another damn word.” He drew a twenty-five caliber pistol from his pocket, which he pointed at Warren and attempted to fire it. The pistol jammed. Thereupon Perkins ejected the shell, prepared to attempt again to fire and Davis, standing by Warren, pushed Perkins back and Warren seized Perkins’ arm, holding Perkins down on a table. Perkins, struggling to free himself, managed to fire three shots, one of which struck Warren in the chest, mortally wounding him. When Warren fell to the floor, Perkins went outside but returned in a few minutes and when someone asked who had shot Warren replied that he had shot the “motherfucker.”
The defense, in essence, was to the effect that Perkins had sought Warren merely to ask what had happened to Perkins’ daughter, and that when Warren had told him that she had been fighting with Barbara Griffin, Perkins had turned to leave but that Warren and Davis had grabbed him and pushed him down on the table and held him there. Perkins said that he had a “heart condition” and that, while being held on the table, began “gasping and choking.” It was then, Perkins said, that he got his pistol out of his pocket and began firing, his only purpose having been, he said, to “get them off of me.”
Afterward, Perkins turned himself in to the local authorities and surrendered the pistol to them. Ten members of the jury which found Perkins guilty of manslaughter recommended mercy and the trial judge sentenced him to six years imprisonment.
Mississippi Code Annotated section 97-3-35 (1972) states:
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
In Hartfield v. State, 176 Miss. 776, 170 So. 531 (1936), this Court has stated:
. The true rule is expressed in an instruction approved by this court in a late case, Ransom v. State, 149 Miss. 262, 267, 115 So. 208, 210, that instruction being in the following words:
‘The court instructs the jury, for the state, that, to make a homicide justifiable on the grounds of self-defense, the danger to the slayer must be either actual, present, and urgent, or the slayer must have reasonable grounds to apprehend a design on the part of the deceased to kill him, or to do him some great bodily harm, and, in addition to this, that there was imminent danger of such design being accomplished; and hence mere fear, apprehension, or belief, however sincerely entertained by one person, that another designs to take his life or to do him some great bodily harm, and yet this will not justify the former in taking the life of the latter party. A party may have an apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the jury may determine the reasonableness of the ground upon which he acted.’
It is not required under this established rule that the accused shall know that the danger is actual and is immediate and imminent; nor, on the other hand, is it sufficient to a complete defense that im *1391 mediate and imminent danger would be apprehended only by a confirmed coward, or by one who, for the time being, is unduly frightened out of his wits. The apprehension of such danger must be real and such as would or should, under the circumstances, be entertained by a reasonably well-disposed man of average prudence; and whether the accused has, in a particular case, measured up to that standard of conduct is a question to be submitted to, and decided by, the jury, as all such questions are submitted to the jury in cases of alleged wrong, whether criminal or civil. And, when a charge of murder is submitted to the jury and the jury is of the opinion from all the evidence that the accused ‘killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in order to prevent the deceased from inflicting death or great bodily harm upon him, then the jury might, under proper instructions, be warranted in returning a verdict of manslaughter.’ O’Banner v. State (Miss.) 169 So. 845, citing Williams v. State, 127 Miss. 851, 90 So. 705. . . . (176 Miss. at 783-784, 170 So. at 532-533)
See also: Rush v. State, 278 So.2d 456 (Miss.1973); Stennis v. State, 234 So.2d 611 (Miss.1970); Yarber v. State, 230 Miss. 746, 93 So.2d 851 (1957); 40 C.J.S. Homicide § 126b(1)(b) at pages 1005-1006 (1944).
The evidence adduced at the trial was ample to support the verdict of guilty of manslaughter.
It is next argued that it was error to grant at the request of the prosecution an instruction relating to the crime of murder and which dealt exclusively with the effect of premeditation on the part of the accused where the accused arms himself with a deadly weapon with the deliberate design to provoke a difficulty with his adversary in order to use the weapon and slay him. The jury’s verdict of manslaughter had the effect of finding Perkins not guilty of murder and obviates the necessity of discussing in detail the alleged faults which appellant argues that the instruction contained.
In Bragg v. State, 210 So.2d 652 (Miss.1968), this Court said:
[T]hat a defendant who has been convicted of manslaughter may not complain at the giving of a murder instruction. Boyd v. State, 253 Miss. 98, 175 So.2d 132 (1965); Pickert v. State, 234 Miss. 513, 106 So.2d 681 (1958); Rogers v. State, 222 Miss. 609, 76 So.2d 702 (1955); Richey v. State, 220 Miss. 790, 72 So.2d 152 (1954); Denham v. State, 218 Miss. 423, 67 So.2d 445 (1953); Trask v. State, 216 Miss. 557, 62 So.2d 888 (1953); Knight v. State, 215 Miss. 251, 60 So.2d 638 (1952); and cases cited therein. (210 So.2d at 653).
Appellant criticizes and assigns as error the action of the trial court in declining to grant several instructions he requested and in granting others requested by the State to which he objected. We have examined all of the instructions given by the trial court to the jury and have concluded that, when read together, they correctly, adequately and fairly apprised the jury of the law in the case.
The record does not reflect that any prejudicial error was committed in the trial and the conviction appealed from should be affirmed.
AFFIRMED.
PATTERSON, C. J., ROBERTSON, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.