467 So.2d 203 (1985)
Clarence Edward COOK
v.
STATE of Mississippi.
No. 54621.
Supreme Court of Mississippi.
March 13, 1985.
*204 Jim W. Rose, Rose & Woodfield, Gulfport, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Confronted by a drunken man, brandishing the large section of a two-piece pool cue in a dark lounge, Clarence Edward Cook panicked, took his friend's pistol out of his waistband and fired one shot, hitting Dudley Chandler, who was as close as two or three feet from him and heading in Cook's direction. After the shot, Chandler walked back to the bar, said something to the effect that "the nigger shot me," took a drink from his beer and fell to the floor. What had begun as an apparently friendly invitation from Chandler to play pool, ended in death.
This appeal from the jury's verdict that Cook was guilty of manslaughter presents a question troubling the criminal justice systems of all states today: what are the rights and responsibilities of a citizen who is in a place where he has every right to be, engaged in an activity he has every right to participate in, and who is then threatened by another. The facts of these confrontations vary endlessly and are always bitterly disputed.
In such cases, we have no choice but to accord great respect and deference to verdicts by properly instructed juries, for the chances of error and injustice in any determination we might make would be infinitely greater than is the case where those findings are made by an impartial jury drawn from a fair cross-section of the community. On the other hand, because we are sensitive to the difficulty of achieving justice and fairness in such cases, we review trial proceedings with care. Where, as here, the jury was not fully instructed regarding the law of justifiable homicide and self-defense, we have no authority but to reverse.

II.

A.
The chain of events leading to the mortal wounding of Dudley Chandler began on March 10, 1982, at 10:00 a.m. Dudley Chandler and a friend, Mike Root, went to the Li'l Loafer Lounge in Gulfport, Mississippi, where they shot pool and drank beer off and on for the rest of the day. Because of Chandler's behavior while at the bar, which included hitting another person on the head with an ash tray, Kay Davis, the bartender on duty from 7:00 a.m. to 3:00 p.m., barred Chandler from the Lounge and told him if he returned she would "call the law" on him. Apparently some time after Chandler was ordered out of the lounge, he returned.
At around 9:30 p.m., Clarence Edward Cook, Defendant below and Appellant here, and his friend Lee Hudson (both are black) stopped at the Li'l Loafer Lounge. Both Hudson and Cook had been to this lounge before. Hudson had previously shot pool there and never been involved in any trouble there. Cook remained in the car while Hudson went inside. When Hudson entered the lounge, he was met by Chandler (who was white), who followed Hudson into the bathroom. The bartender on duty at that time, Linda Chumney, was apprehensive because Chandler's friend, Root, told her that Chandler held a grudge against all *205 black people. When they came out of the bathroom, Chandler was smiling and had his arm around Hudson. This scene appeared strange to Chumney. Chandler told Jeanine "J.J." Record that night that his wife had been shot and killed by blacks. Cook later became aware of this fact.
Chandler and Hudson went outside the lounge, got Cook out of the car, and the well-inebriated Chandler invited the two black men to come inside and play pool. Cook purchased beers for all, and Hudson placed his quarters on the table to commence the game of pool. Chandler's lady friend, J.J., "broke the balls" with her shot. When Hudson sought his turn, he was told by Chandler that if he played a ball, he was going to get jumped upon. Hudson asked about his 50 cents, and when he received no response, he went to Chumney to advise her of the situation.
Davis, who had returned to the lounge and was sipping a soft drink, saw what was happening and told Hudson she would give him a refund, but Hudson replied that Chandler owed him the money. Chandler, who had followed Hudson to the bar, cursed Davis and called Hudson a "m____f____ nigger" or some such name and began slapping his pool stick in the palm of his hand and telling Hudson to leave the lounge. Chandler told Hudson either to get his "black ass" out or "I told you to get the hell out of the bar." Although Hudson said he did not want any trouble, Chandler, nevertheless, poked or pushed Hudson in the back with a pool stick, forcing Cook and Hudson to leave. After the black men had gone, Chandler bragged how he had run the "niggers" out of the bar.
Hudson and Cook, riding in Hudson's mother's Cadillac  which had a history of having a weak battery requiring jumps from other cars  went in the direction of Phillips College where Hudson planned to meet a girl at 10:00 p.m. Cook got out of the car at the Li'l General Food Store on Cowan Road, and Hudson continued his trip to the college. Hudson evidently failed to meet his girl as planned and returned a few minutes later to where he had left Cook and both men returned to the Li'l Loafer Lounge approximately 20 minutes after they had first left it.
For reasons neither made clear nor adequately explained, Cook picked up a gun Hudson had in the car and put it in his waistband as the two walked in. Hudson preceded Cook into the bar and headed straight for the bartender to ask for his money. Hudson was not loud nor did he use foul language, but Chandler, who was standing nearby at the bar beside Root and Record, responded, "I'll give you your damn 50 cents." Chandler told Hudson that he had gotten run out of the bar before and he was going to get run out again. Cook, standing by the door, watched the events and said nothing.
Chandler then grabbed the large part of Record's two-piece pool cue, which had been unscrewed and was lying on the bar. His demeanor menacing, Chandler headed toward Hudson, while Hudson backed away in the direction of the door. Hudson retreated past Cook and out of the door, leaving Cook, who was then in a panic, to face Chandler. Cook, thinking he was about to be hit with a pool stick, pulled the gun, fired once and fled out the door. The two men then got in the Cadillac, the motor of which had been left running, and left. Cook and Hudson were arrested a few hours later and Cook gave a statement to police concerning the events of that night.

B.
Procedurally, this criminal prosecution was commenced on April 23, 1982, when the Grand Jury of the First Judicial District of Harrison County, Mississippi, charged in an indictment that Clarence Edward Cook and Lee Ellis Hudson had on March 10, 1982, murdered Dudley Forrest Chandler, contrary to the laws of this state. Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1982). On June 16, 1982, the Circuit Court ordered a severance of the charges against Cook and Hudson.
On June 28, 1982, this case was called for trial in Circuit Court in Gulfport, Mississippi. *206 At the conclusion of the State's evidence, Cook moved for an order of dismissal on the grounds that the State's evidence was insufficient as a matter of law to sustain a conviction of murder. In the alternative, Cook asked that the charges be reduced to manslaughter. The trial judge overruled the defense motions but gave his opinion that an instruction on the lesser-included offense of manslaughter should be submitted to the jury.
Thereafter, Cook presented his case, and after both sides had rested, Cook requested that the jury be instructed peremptorily that he should be found not guilty. This request was denied. The State then requested that the jury be instructed regarding the lesser-included offense of manslaughter. Cook objected several times on the grounds that there was no basis in the evidence to support the giving of a manslaughter instruction. A careful review of the record suggests that Cook was objecting to the submission of any manslaughter instruction at all rather than to the form of the particular manslaughter instruction which was ultimately presented to the jury.
At Cook's request the trial judge granted a standard self-defense instruction. Cook also requested Instruction No. D-8 which, in effect, would have advised the jury that, under the facts of this case, Cook was not required to flee when Chandler approached and that Cook did not by standing his ground lose the right to claim that the homicide was justifiable. Miss. Code Ann. § 97-3-15(f) (1972). Instruction No. D-8, about which more will be said later, was denied.
In any event, on June 29, 1982, the matter was submitted to the jury on the charge of murder brought in the indictment, on the lesser-included offense instruction of manslaughter and on the defense's theory of self-defense. The jury found Cook guilty of manslaughter and on the following day Cook was committed to the custody of the Mississippi Department of Corrections for a term of fifteen (15) years.
Cook timely filed the usual post-trial motions, challenging both the sufficiency and the weight of the evidence against him. These motions were overruled, following which this appeal has been perfected.

III.
Our initial inquiry on this appeal is whether, as a matter of law, the evidence is sufficient to undergird the jury's verdict of guilty of manslaughter. The jury having, in effect, acquitted the Defendant Cook of the principal charge of murder, we are no longer concerned with the charge in the indictment. Carter v. State, 402 So.2d 817, 819 (Miss. 1981); Moss v. State, 386 So.2d 1129, 1132 (Miss. 1980).
The crime of manslaughter is defined by statute. Indeed, our legislature has enacted that there are eleven separate and distinct categories of homicide which have been denominated manslaughter and made subject to punishment as such. See Miss. Code Ann. §§ 97-3-27 through -47 (1972).
The type of manslaughter most commonly prosecuted is that committed in the heat of passion and defined more specifically in Miss. Code Ann. § 97-3-35 (1972) as follows:
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
This is obviously the type of manslaughter contemplated by the trial judge and jury in this case, for we find that the jury was instructed as follows:
INSTRUCTION NO. S-2
The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt, that the Defendant, Clarence Edward Cook, and another, on or about the time and date charged and testified about, in the First Judicial District of Harrison County, Mississippi, did unlawfully willfully and feloniously and in the heat of passion kill and slay a human being, and not in necessary self-defense, to-wit: Dudley Forrest *207 Chandler; then if you so believe from the evidence in this case beyond a reasonable doubt, then the Defendant is guilty of Manslaughter, and it is your sworn duty to say so by your verdict.
In the context of the facts of this case, it is important to note that Section 97-3-35 manslaughter has acquired two seemingly separate definitions which appear to emanate from Williams v. State, 127 Miss. 851, 90 So. 705 (1921).
There are ... [two] theories under which the appellant could be guilty of manslaughter: First, that he killed the deceased "in the heat of passion, without malice, by the use of a deadly weapon, without authority of law, and not in necessary self-defense" (Section 1238, Code of 1906, [Section 968, Hemmingway's Code]); second, that he killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him so to do in order to prevent the appellant from inflicting death or great bodily harm upon him; ... .
127 Miss. at 854, 90 So. at 706.
While it was perhaps once arguable that this second theory of manslaughter stated in Williams has no designated statutory base, Perkins v. State, 359 So.2d 1389 (Miss. 1978), may only be understood as holding to the contrary, as providing that both theories of manslaughter as articulated in Williams are based upon the heat of passion statute. 359 So.2d at 1391; see also Hartfield v. State, 176 Miss. 776, 783-84, 170 So. 531, 533 (1936) (citing Williams); Ransom v. State, 149 Miss. 262, 267, 115 So. 208, 210 (1928) (embracing the logic of Williams).
This second variety of Section 97-3-35 manslaughter is best understood in contradistinction to our law regarding self-defense. Our self-defense statute in effect at that time Cook shot Chandler,[1] Miss. Code Ann. § 97-3-15(f) (1972), provides:
The killing of a human being by the act, procurement, or omission of another shall be justifiable ... [w]hen committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished. [emphasis added].
The actor's apprehension must be objectively reasonable before his homicide is justified. See Robinson v. State, 434 So.2d 206, 207 (Miss. 1983). Where the actor's apprehension is only subjectively, in his or her own mind, reasonable, the homicide is Section 97-3-35 manslaughter. In the oftquoted language of the Williams case, the homicide is manslaughter where the defendant acted "under the bona fide belief [of necessity], without [objectively] reasonable cause therefor, ..." 127 Miss. at 854, 90 So. at 706.
This second theory of Section 97-3-35 manslaughter, as articulated in Williams  the bona fide belief that it was necessary in order to prevent infliction of great bodily harm  is exemplified in Jordan v. State:
Jordan testified that Rose kicked on the door, and when opened, Rose accused him of short changing him. Rose entered, ordered another half pint of whiskey, and paid for it. He then accused Jordan of trying to be funny or smart, and slapped him twice. After that, Jordan said he picked up a shotgun lying on a cot at the back of the small building, pointed it at Rose, and ordered him to get out; Rose "reached over with his right hand and snatched the gun, jerked the gun, and it went off."
248 Miss. 703, 706, 160 So.2d 926, 926 (1964).
It is relatively easy to find within this record evidence that Cook is guilty of the second type of Section 97-3-35 manslaughter. There is no dispute that Cook killed Chandler. There seems little dispute but that he killed without malice. Cook's *208 testimony, somewhat corroborated by the other witnesses, suggests that he acted under a bona fide subjective belief that it was necessary for him to kill Chandler to prevent infliction by Chandler of death or great bodily harm upon himself. By the same token, there is substantial evidence in the record from which the jury could have concluded that any such subjective belief on Cook's part was "without reasonable cause therefor". The evidence suggests that Chandler's principal animus was directed toward Hudson, not Cook. Under the facts and circumstances of this case, the jury could reasonably have concluded that a swaggering drunk such as Chandler wielding the pool cue simply did not present Cook with a life threatening situation. In short, the facts fit well within that category of manslaughter defined in Williams and Perkins as the killing of the deceased without malice, but under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in order to prevent infliction of death or great bodily harm upon himself.[2]
Having well in mind the evidence in this case as well as the appropriate substantive components of the criminal offense of manslaughter, we note briefly our limited scope of review when challenges are made on appeal to the sufficiency of the evidence at trial, for fairly encompassed within Cook's first assignment of error is an appeal from the trial court's denial of his request for a peremptory instruction at the conclusion of all the evidence as well as the trial court's denial of his post-trial motion for acquittal as a matter of law.
The request for a peremptory instruction or the subsequent motion for judgment of acquittal notwithstanding the verdict of the jury tests the legal sufficiency of the evidence supporting the State's case. It asks the court to hold, as a matter of law, that on this evidence no verdict or judgment of conviction may stand. It asks the court to hold as a matter of law that the defendant must be finally discharged of and from the offense charged in the indictment as well as all lesser-included offenses.
Where a defendant has requested a peremptory instruction, the trial court must consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss. 1984). The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the peremptory instruction must be given. On the other hand, if there is substantial evidence opposed to the motion and favoring the State's case  that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, fairminded men in the exercise of impartial judgment might reach different conclusions  the request for a peremptory *209 instruction should be denied. May v. State, 460 So.2d 778, 781 (Miss. 1984).
These standards have been repeatedly applied in the context we confront today: an indictment charging murder, a defense plea of self-defense, and a jury verdict of guilty of manslaughter. Where, as here, the evidence, viewed under the standards described above, is not wholly inconsistent with the verdict, we affirm. May v. State, 460 So.2d 778, 785 (Miss. 1984); Jones v. State, 442 So.2d 919, 921 (Miss. 1983); Hubbard v. State, 437 So.2d 430, 438-439 (Miss. 1983).
In sum, we can only hold that the trial judge correctly overruled Cook's request for a peremptory instruction of acquittal as well as his subsequent motion for judgment of acquittal notwithstanding the verdict of the jury. Cook's first assignment of error is denied.

IV.
Cook next complains of the granting of Instruction No. S-2 at the request of the State. This is the instruction that submitted the lesser-included offense of manslaughter to the jury.[3]
Careful consideration of Cook's argument makes clear that he complains not of the particular wording of Instruction No. S-2 but of the submission of a manslaughter instruction at all. Cook takes an all or nothing approach to the case: his homicide was either murder or justifiable. The giving of a manslaughter instruction, he says, only encouraged a compromise verdict  Cook's view being that this is the true import of the manslaughter verdict in fact returned by the jury.
It is certainly true that in a murder prosecution manslaughter instructions should not indiscriminately be given. Heat of passion being an affirmative element of manslaughter not present in murder, that type of manslaughter instruction should not be given unless there is substantial evidence to support it. Fairchild v. State, 459 So.2d 793, 801-802 (Miss. 1984).
We have observed recently that proof of a physical assault by the victim (here Chandler) upon the accused (here Cook) is a factor that often justifies the giving of a manslaughter instruction. Stevens v. State, 458 So.2d 726, 731 (Miss. 1984)(cases cited therein). From what has been said in Section III above, we trust it is clear that the State was entitled to have the jury instructed regarding the second theory of Section 97-3-35 manslaughter, had the State so requested.
Cook's assignment of error runs aground on the fact that this record contains evidence sufficient to support a jury finding of guilty of murder, had the jury so found. Where the evidence is such, the defendant will not be heard to complain that a manslaughter instruction was given. Hubbard v. State, 437 So.2d 430, 438-439 (Miss. 1983). This is so even though the manslaughter instruction was not warranted under the evidence. Grace v. State, 379 So.2d 540, 542 (Miss. 1980). The assignment of error is denied.

V.
Cook next assigns as error the trial court's refusal to submit to the jury Instruction No. D-8. That instruction in substance would have advised the jury that, so long as Cook (a) was in a place where he had a right to be and (b) was neither "the immediate provoker or aggressor", he was not required to flee on pain of forfeiting his defense of self-defense.[4]
*210 The State answers that the jury had already been fully instructed regarding Cook's self-defense theory. It is true that Instruction No. D3 quite fairly states the general contours of our law on justifiable homicide or self-defense.[5]See Robinson v. State, 434 So.2d 206, 207 (Miss. 1983). In accord with common sense, we have held that, where one jury instruction adequately covers the defendant's theory of self-defense, there is no error in refusal of a second or redundant instruction. Evans v. State, 457 So.2d 957, 959 (Miss. 1984).
The problem here is that the point Instruction No. D-8 covered is not mentioned directly or indirectly in D-3, nor in any other instruction given the jury. More specifically, the jury was not told of the import under our law, first, of the fact that Cook was on premises not his home but where he nevertheless had a right to be, and, second, of the fact that he did not flee as Chandler approached.
Less than a year ago we confronted a situation in law quite similar[6]  and in an appeal from the same circuit court as tried the case at bar: Haynes v. State, 451 So.2d 227 (Miss. 1984). Speaking for the Court, Justice Hawkins wrote in Haynes
It has always been the law in this state that a defendant is not deprived of the right to claim self-defense in a slaying even if he could have avoided the threat to his safety by fleeing.
In Long v. State, 52 Miss. 23 (1876), p. 34, it is stated:
Flight is a mode of escaping danger to which a party is not bound to resort, so long as he is in a place where he has a right to be, and is neither engaged in an unlawful, nor the provoker of, nor the aggressor in, the combat. In such case he may stand his ground and resist force by force, taking care that his resistance be not disproportioned to the attack.
451 So.2d at 229.
Haynes held it error, in the context of the facts of that case, for the trial judge to have refused an instruction verbatim practically identical to Instruction No. D-8 here.
[T]he latter part of the requested instruction correctly stated the law... . In this case we think the judge should have either granted the instruction or some instruction that embraced this principle.
451 So.2d at 229; see also Ellerbe v. State, 79 Miss. 10, 17, 30 So. 57, 58 (1901); cf. 2 Alexander, Model Jury Instructions § 4356 (1953).
*211 On the evening of March 10, 1982, Clarence Edward Cook was in a place where he had every right to be. There is not one iota of proof that Cook provoked the incident or was in any way an aggressor. In this context, Haynes mandates that he was entitled to have the jury told that
he may stand his ground without losing the right of self-defense.[7]
451 So.2d at 229.
We have carefully reviewed the other instructions in the case. As indicated, Instruction No. D-3 is a generally adequate garden variety self-defense instruction. It fails, however, to embrace the principle at issue here. For this reason, the trial judge committed error when he refused Defendant's Instruction No. D-8.
In view of the foregoing, the conviction of Clarence Edward Cook of the crime of manslaughter is reversed and the sentence of fifteen (15) years imposed upon him is vacated. This case is remanded to the Circuit Court of the First Judicial District of Harrison County, Mississippi, for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] This statute was amended effective January 1, 1984. See Miss. Laws of 1983, ch. 382. Section 97-3-15(f) is now Section 97-3-15(1)(f). Its wording is unchanged.
[2] It may be argued, however, that the jury was not instructed on this theory. To be sure, Instruction S-2 states the more traditional heat of passion manslaughter theory, the first variety of Section 97-3-35 manslaughter. A careful review of the record reflects, however, that counsel for Cook at trial did not object to Instruction S-2 on grounds that it stated the wrong manslaughter theory; rather, Cook's objection was to the giving of a manslaughter instruction at all. Arguably, Cook has presented no issue regarding the giving of this particular manslaughter instruction. See Rule 42, Miss.Sup.Ct.R. See infra Section IV.

More importantly, we consider that the issue in question was submitted to the jury via Instruction No. D-3, Cook's self-defense instruction. That instruction tells the jury, in effect, that it should find Cook not guilty if it found that Cook "reasonably believed" that Chandler was about to hit him with a pool cue stick and that Cook "had reasonable cause to believe" that he was in imminent danger. A reasonably intelligent jury would conclude from this instruction that, if Chandler believed he was in a life threatening situation but if under the circumstances that belief was objectively unreasonable, Cook was not entitled to an acquittal. In the absence of a defense request for an instruction defining manslaughter in the manner contemplated above, we regard that the issue was fairly presented to the jury on Instruction No. D-3.
[3] See supra note 2.
[4] The entire Instruction No. D8 as requested reads:

You are instructed that while the danger which will justify the taking of another's life must be imminent, impending, and present, such danger need not be unavoidable except by killing in self defense. The Defendant, CLARENCE EDWARD COOK, need not have avoided the danger to his person presented by the deceased, DUDLEY CHANDLER, by flight. So long as the Defendant was in a place where he had the right to be and was neither the immediate provoker or aggressor, he may stand his ground without losing the right of self defense.
[5] This instruction, as presented to the jury, reads as follows:

INSTRUCTION NO. D3
The Court instructs the Jury that in deciding upon the guilt or innocence of CLARENCE EDWARD COOK, you should determine what an ordinary and reasonable man might have reasonably inferred from all the facts and circumstances by which the evidence shows that CLARENCE EDWARD COOK was at the time surrounded, and, in doing so must not try him in the light of subsequent developments nor must they require of him the same cool judgment that the Jury can now bring to bear upon the occurrence. The Jury must put themselves, as far as possible, in CLARENCE EDWARD COOK'S place, and then judge whether the danger was apparent, or should have been considered apparent by a man of ordinary caution and prudence in like condition.
The Court instructs the Jury that although you may find in this case that CLARENCE EDWARD COOK was armed at the time he was in the Lil Loafer Lounge on the evening in question, if you also believe that CLARENCE EDWARD COOK never had any intent to kill DUDLEY CHANDLER, and that he was then and there faced with a situation where the deceased had a pool cue stick and made threatening gestures in the direction of CLARENCE EDWARD COOK, and that CLARENCE EDWARD COOK then and there reasonably believed that DUDLEY CHANDLER was attempting to hit him or would hit him with the pool cue stick and that CLARENCE EDWARD COOK had reasonable cause to believe and did believe that he was in imminent danger of being killed or receiving serious bodily harm at the hands of DUDLEY CHANDLER and that it was necessary to shoot at him to save his own life, then you will find the defendant CLARENCE EDWARD COOK not guilty.
[6] Instruction D-11 in Haynes was the counterpart to D-3 in Cook's case. These two instructions are nearly identical. D-13 in Haynes was the counterpart to D-8 in Cook's case. These two instructions  except for the names of the parties  are identical.
[7] Our law appears to be aligned with those jurisdictions which, according to II Wharton's Criminal Law § 126, at 132 (Torcia ed. 1979), hold that

the defendant must retreat only if he is acting in "excusable" self-defense, i.e., if he was blameworthy to some degree in bringing about the occasion for the need to use deadly force; but he need not retreat if he is acting in "justifiable" self-defense, i.e., if he was not culpable in bringing on the attack which necessitated his use of lethal force. In the latter case, the defendant need not retreat but may stand his ground and kill his assailant if reasonably necessary.
We are aware, however, that there is another view, one which appears to have the endorsement of the majority of the states. That view, again in Wharton's words at pages 131-132 is that
the defendant must retreat if the threatened harm can thereby be avoided. But he need not retreat if it would increase the danger to his life, as where the assailant is wielding a gun. If the defendant is required to retreat and he can do so with reasonable safety, he must "retreat to the wall". The "wall" is reached when, because of a physical barrier, the defendant is able to retreat no further; the "wall" is reached in a figurative sense when further retreat would increase the danger to defendant's life. In either case, when the "wall" is reached, the defendant may kill his assailant if reasonably necessary.
In this day of an ever increasing vigilante mentality on the part of many, there is much to commend this view. However, no one has here urged that we alter our existing rule and we are content for the day merely to note that there is another view. See also Perkins, Criminal Law 899-903 (1957). Suffice to say that in the case at bar the trial judge gave no "retreat" instruction although he was requested by Cook to do so. Compare the instruction given by the trial court and discussed briefly by this Court in May v. State, 460 So.2d 778, 784 (Miss. 1984).