GRIFFIS, P.J.,
for the Court:
¶ 1. Druscilla Thomas was convicted of aggravated assault. She was sentenced to a term of fifteen years, with ten years to serve followed by five years of post-release supervision. On appeal, Thomas argues that the trial court erred when it refused a jury instruction that would have informed the jury that she had no duty to flee Kerwanda Mitchell’s attempted use of deadly force. She also argues that the verdict is against the overwhelming weight of the evidence. We find no error and affirm.
FACTS
¶ 2. Thomas worked as a disc jockey at a night club called the Meeting Place. On July 28, 2010, Thomas’s cousin Bridget Adams (“Beebe”) and Mitchell were also at the club. Beebe offered Mitchell a ride home in Thomas’s car.
¶ 8. According to Mitchell’s version of the events, Thomas walked up to the car and said, “Where is this B[* * * *] think she going?” Mitchell replied, “Hold on, you don’t know me like that. You is a B[* * * *].” Mitchell testified that Thomas sat in the front seat, and the argument continued. Thomas asked Mitchell to get out of the car and Mitchell did.
¶4. Mitchell testified that Thomas got out of the car and hit Mitchell from behind on the side of her face. Mitchell fell to the ground, and Thomas got on top of Mitchell and hit her. Mitchell reached into her bra, pulled out a knife, and stabbed Thomas in her stomach. They both got up, and Mitchell walked away and swung the knife as Thomas continued to fight. Other peo-pie broke up the fight. Mitchell dropped the knife and walked away.
¶ 5. Mitchell testified that she was alerted to turn around. When she turned around, Thomas had a gun in her face. Mitchell said she put her hands in front of her face, and Thomas shot the gun. The bullet hit Mitchell’s left hand. Mitchell ran to a nearby house. Thomas followed and continued to shoot at her.
¶ 6. Once Mitchell arrived at the nearby house, the police were called. Mitchell went to Delta Regional Medical Center. She was then transported to University Medical Center in Jackson. A metal plate was inserted into her hand. She is now unable to close her hand.
¶ 7. According to Thomas, once she finished work and got paid, she walked out to her car to go home. Thomas noticed Mitchell in her back seat and asked where Mitchell was going. Mitchell told her, “You going to take me on Nelson [Street].” Thomas told her she would not take her anywhere because she was ready to go home. Thomas testified Mitchell “went to calling me all types of b* ⅜ ⅞ * *s ... and this here and that.”
¶ 8. Thomas testified that she then got out of her car to call 911. She said Mitchell also got out of the car and “rushed and stabbed me with an ice pick.” She said Mitchell stabbed her on top of the head and in the stomach.
¶ 9. Thomas testified that at this point she feared for her life. So, she grabbed a gun from inside her bra and shot Mitchell. She testified that she only shot her gun once, and her only objective was to protect herself. Thomas said she took her cousin home and then went to the emergency room. She was treated for stab wounds to the head and stomach.
¶ 10. Investigator Jeffrey Grace responded to a call that someone had been *690 shot at 204 South Seventh Street. Grace testified that in the statement he initially took from Mitchell, she said Thomas hit her, knocked her into a barbeque pit, and slammed her to the ground by the throat. Mitchell testified that she did not remember making this statement.
¶ 11. Officer Chris Surf also responded. Officer Surf saw Mitchell on the ground with what appeared to be a gunshot wound to the left hand. He testified that he later went to Delta Regional Medical Center and observed Thomas’s car in the parking lot. He observed blood smeared in the front of the driver area, including on the steering wheel, dashboard, and shift. He then spoke with Mitchell. Mitchell stated that Thomas had shot her.
¶ 12. John Pork testified that he had told the police his name was John Wheatley and that he saw Thomas shoot Mitchell. Pork also testified that he was intoxicated at the time he made those statements. At trial, he testified that he did not see Thomas shoot Mitchell. He admitted that he had dated Thomas but claimed he did not date her at the time of the incident or trial. Later in his testimony, Pork said that he did not remember telling the police he saw Thomas shoot Mitchell, because he had been drinking.
¶ 13. The jury found Thomas guilty.
ANALYSIS

I. The trial court did not err when it refused to give Thomas’s stand-your-ground jury instruction.

¶ 14. This Court applies an abuse-of-discretion standard of review to the refusal of jury instructions. Harris v. State, 85 So.3d 300, 304-05 (¶ 11) (Miss.Ct.App.2012). “‘[T]he instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.’ ” Newell v. State, 49 So.3d 66, 73 (¶ 20) (Miss.2010) (quoting Rubenstein v. State, 941 So.2d 735, 785 (¶224) (Miss.2006)).
¶ 15. Thomas argues that the court erred when it refused to give the following jury instruction:
The Court instructs the jury that in order to claim self-defense, there is no duty to flee on the part of a person faced with life threatening danger, so long as she is in a place where [she] has a right to be, and is neither engaged in an unlawful [sic], nor the provoker of, nor the aggressor in the combat; in such case, she may stand [her] ground and resist force by force, taking care that her resistance be not disproportion^!] to the attack.
¶ 16. The Mississippi Supreme Court addressed whether it is error to refuse a stand-your-ground instruction in Spires v. State, 10 So.3d 477, 483 (¶ 26) (Miss.2009). Spires argued the trial court had erred when it refused to give a stand-your-ground instruction to the jury. Id. The supreme court held that “[e]very accused has a fundamental right to have her theory of the case presented to a jury, even if the evidence is minimal.” Id. at (¶ 27) (quoting Chinn v. State, 958 So.2d 1223,1225 (¶ 13) (Miss.2007)).
¶ 17. The court also determined “[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. Id. at (¶ 28) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). Furthermore, when there is doubt “as to whether an instruction should be included, *691 the doubt should be resolved in favor of the accused.” Maye v. State, 49 So.3d 1124, 1129 (¶ 8) (Miss.2010) (citation omitted).
¶ 18. We first consider whether the proposed instruction correctly stated the law. In Craig v. State, 660 So.2d 1298, 1300 (Miss.1995), the court stated that if a person is (1) in a place where she has a right to be and (2) not the provoker or aggressor, that person can stand her ground as long as her resistance is not disproportionate to the attack. Thomas’s proposed instruction correctly stated the law.
¶ 19. Next, we consider whether the proposed instruction was covered fairly elsewhere in the instructions.
¶ 20. The Mississippi Supreme Court addressed whether it is error to refuse a stand-your-ground instruction in Cook v. State, 467 So.2d 203, 211 (Miss.1985). Cook argued the trial court erred when it refused to submit the jury an instruction that said Cook did not have to flee if he was in a place where he had the right to be and was not the immediate aggressor. Id. at 209. The court noted that the jury had been given a general self-defense instruction. Id. at 210. It also noted that “where one jury instruction adequately covers the defendant’s theory of self-defense, there is no error in refusal of a second or redundant instruction.” Id. (citation omitted). The court found Cook was where he had a right to be and that there was no proof that he was the aggressor. Id. at 211. Thus, he was entitled to an instruction that he could stand his ground and not forfeit his right of self-defense. Id. The general instruction read:
The Court instructs the Jury that in deciding upon the guilt or innocence of CLARENCE EDWARD COOK, you should determine what an ordinary and reasonable man might have reasonably
inferred from all the facts and circumstances by which the evidence shows that GLARENCE EDWARD COOK was at the time surrounded, and, in doing so must not try him in the light of subsequent developments nor must they require of him the same cool judgment that the Jury can now bring to bear upon the occurrence. The Jury must put themselves, as far as possible, in CLARENCE EDWARD COOK’S place, and then judge whether the danger was apparent, or should have been considered apparent by a man of ordinary caution and prudence in like condition.
The Court instructs the Jury that although you may find in this case that CLARENCE EDWARD COOK was armed at the time he was in the Lil Loafer Lounge on the evening in question, if you also believe that CLARENCE EDWARD COOK never had any intent to kill DUDLEY CHANDLER, and that he was then and there faced with a situation where the deceased had a pool cue stick and made threatening gestures in the direction of CLARENCE EDWARD COOK, and that CLARENCE EDWARD COOK then and there reasonably believed that DUDLEY CHANDLER was attempting to hit him or would hit him with the pool cue stick and that CLARENCE EDWARD COOK had reasonable cause to believe and did believe that he was in imminent danger of being killed or receiving serious bodily harm at the hands of DUDLEY CHANDLER and that it was necessary to shoot at him to save his own life, then you will find the defendant CLARENCE EDWARD COOK not guilty.
Id. at 210 n. 5. The supreme court found that this instruction did not embrace the principle at issue. Id. at 211. As such, *692 the trial judge erred when he refused the stand-your-ground instruction. Id.
¶ 21. However in Spires, the Mississippi Supreme Court found that Spires’s argument failed because his stand-your-ground instruction was “covered fairly elsewhere in the instructions.” Spires, 10 So.3d at 484 (¶ 29).
¶ 22. The argument in Spires was the same as Thomas’s argument in this case. Thus, it is necessary to compare the instructions given in Spires with those given in this case to determine if the stand-your-ground instruction was fairly covered.
¶ 23. The following self-defense instructions were given in Spires:
Instruction S-101 stated:
The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the Defendant acts. Instruction S-102A stated:
The Court instructs the Jury that a person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm. The question of whether he was justified in using the weapon is for determination by the jury.
The law tolerates no justification and accepts no excuse for an assault with a deadly weapon on a plea of self-defense except when the assault by the Defendant on the victim was necessary or apparently so to protect the Defendant’s own life or his person from great bodily injury and there was imminent danger of such design being accomplished. The danger to life or of great personal injury must be or reasonably appear to be imminent and present at the time the Defendant commits the assault with a deadly weapon. The term “apparent” as used in “apparent danger” means such overt, actual demonstration by conduct and acts of a design to take life or do some great personal injury as would make the Capital Murder apparently necessary to self preservation or to escape great bodily harm.
Instruction D-6A stated:
The Court instructs the jury that every killing of a human being is not a crime, and that it is not incumbent upon the Defendant, Joel Scott Spires, to prove conclusively that he acted in self-defense. All that is necessary for the Defendant, Joel Scott Spires, to prove in order to establish self-defense, is that at the time of death of Rodney Wade Saucier, the Defendant, Joel Scott Spires, had reasonable grounds to apprehend danger to his life or great bodily harm on account of the actions of Rodney Wade Saucier and if you, the jury find that the Defendant, Joel Scott Spires, had reasonable grounds to apprehend danger to his life or great bodily harm on account of the actions of Rodney Wade Saucier and that the Defendant, Joel Scott Spires, acted in self-defense, then you, the jury shall find Joel Scott Spires, “Not Guilty.”
Instruction D-9A stated:
The Court instructs the jury that the Defendant, Joel Scott Spires, was entitled to act upon appearances. If the conduct of Rodney Wade Saucier was such as to induce in the mind of a reasonable person a fear that death or great bodily harm was about to be in *693 flicted by Rodney Wade Saucier on Joel Scott Spires, situated as was the Defendant, Joel Scott Spires, under all the circumstances then existing, and viewed from the standpoint of the Defendant, Joel Scott Spires, then it does not matter if there was no such danger. If you the jury believe that the Defendant, Joel Scott Spires, acted in self-defense from the real and honest conviction that he was in danger or [sic] death or great bodily harm, then you, the jury, shall find the Defendant, Joel Scott Spires, “Not Guilty,” even though you, the jury, believe that at the time Joel Scott Spires was mistaken and was not in any great danger.
Id. at 484-85 (¶¶ 31-34).
¶ 24. Although none of the instructions explicitly referred to Spires’s right to stand his ground, the court found that the instructions given “ ‘fairly covered’ Spires’s right to stand and fight if he reasonably believed that he was in danger of death or great bodily harm.” Id. at 485 (¶ 35).
¶ 25. Here, the jury was given the following instructions:
Jury Instruction No. 7
The Court instructs the Jury that if a defendant invokes the right of self-defense in resisting an attacker, then the defendant may not use more force than reasonably necessary under the circumstances then and there existing to repel her attacker.
If you find from the evidence, beyond a reasonable doubt, that the Defendant, Druscilla Thomas, caused serious bodily injury to Kerwanda Mitchell by shooting her and that said shooting was a use of more force than reasonably] necessary under the circumstances of this case, then the defense of self-defense would not apply to this case.
It is for the Jury to determine the appropriateness of [the] defendant’s weapon and use of force.
Jury Instruction No. 8
The Court instructs] the jury that to make an assault justifiable on the grounds of self-defense the danger to Druscilla Thomas, must be either actual, present, or urgent, or Druscilla Thomas must have reasonable grounds to apprehend a design on the part of Kerwanda Mitchell to do her some great bodily harm, and in addition to this, Druscilla Thomas, must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness upon which the defendant acts. If you the jury unanimously find the defendant acted in self-defense, then it is your sworn duty to return a verdict in favor of the defendant.
Instruction No. 12
The Court instructs the jury that to make a shooting justifiable on the grounds of self-defense, the danger to the defendant must be either, actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to do to him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts. The Court further instructs the jury that if you find from the evidence in this case that on or about July 28, 2010, that Druscilla Thomas, did shoot and injure Kerwanda Mitchell; but that such shooting was in necessary self-defense, then it is your sworn duty under the law to find the Defendant, Druscilla Thomas, not guilty of Aggravated Assault.
*694 Instruction No. 13
The Court instructs the jury that you are not to judge the actions of Druscilla Thomas in the cool, calm light of after-developed facts, but instead you are to judge [her] actions in the light of the circumstances confronting Druscilla Thomas at the time, as you believe from the evidence that those circumstances reasonably appeared to her on that occasion; and if you believe that under those circumstances it reasonably appeared to Druscilla Thomas that [she] then and there had reasonable grounds to apprehend some great personal injury from Kerwanda Mitchell, and there reasonably appeared to Druscilla Thomas to be imminent danger of such designs being accomplished; then she was justified in using reasonable means to defend such attack, [and] you must find Druscilla Thomas not guilty of Aggravated Assault.
¶26. In both Cook and Spires, none of the instructions specifically referred to the defendants’ rights to stand their ground. Similarly, here, none of the instructions specifically referred to Thomas’s right to stand her ground. However, following Spires, we conclude that the instructions given fairly covered Thomas’s right. As such, we find that the trial court was not in error to refuse the stand-and-fight instruction, because the instructions given fairly covered Thomas’s right to stand and fight if she reasonably believed that she was in danger of death or great bodily hann.
¶ 27. Finally, we consider whether there was a factual basis for the proposed instruction.
¶ 28. In Banyard v. State, 47 So.3d 676, 681 (¶ 12) (Miss.2010), the supreme court held that “[a] criminal defendant is entitled to have his jury instructed on all offenses of which an evidentiary basis exists in the record, even where the evidence arises only in the defendant’s own testimony.” Thus, this Court may look to Thomas’s testimony for evidentiary support for the stand-your-ground instruction.
¶29. In Spires, the supreme court found that there was no factual basis for the stand-your-ground instruction and found “nothing in Spires’s testimony that would suggest to a reasonable juror that he ever had an opportunity to retreat from the fight.” Spires, 10 So.3d at 485 (¶ 36). Instead, Spires testified that he did not have the opportunity to escape the fight. Id. In Haynes v. State, 451 So.2d 227, 229 (Miss.1984), the court ruled that “[w]hen-ever, from the facts of the case, it appears that the defendant could have avoided the fatal difficulty only by precipitous retreat, but did not leave, if the other requisite factors are present ... then the defendant is entitled to such an instruction.”
¶ 30. Again, this case is similar to Spires. Thomas testified that she “saw [Mitchell] was coming down with the ice pick again, and I just shot her in her hand.” Furthermore, she testified the incident only lasted “probably about 45 seconds.” Although Thomas did not specifically say she did not have the opportunity to flee, her testimony indicates that under her version of events, she could not have retreated and avoided the conflict. Thus, there was no factual basis for the stand-your-ground instruction and nothing in Thomas’s testimony that would suggest to a reasonable juror that she ever had an opportunity to retreat from the fight. As a result, the jury instruction was not supported by the evidence.
¶ 31. Furthermore, under Mitchell’s version of events, the jury instruction was not supported by the evidence. Under Mitchell’s version, Thomas began the altercation when she hit Mitchell. Thomas continued to attack Mitchell, and Mitchell stabbed Thomas in the stomach. Mitchell *695 then abandoned the conflict, dropped her weapon, and walked away when she was alerted to turn around. When she turned around, Thomas’s gun was pointed toward her. Mitchell then put her hands in front of her face defensively and Thomas shot her. Thus, under Mitchell’s version of events, Thomas was the provoker or aggressor and, as such, was not entitled to a stand-your-ground instruction.
¶ 32. Because the stand-your-ground instruction was not supported by the evidence and was covered fairly elsewhere in the instructions, it was not error for the trial court to refuse the instruction.

II. The verdict was not against the overwhelming weight of the evidence.

¶ 33. In reviewing “the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citation omitted). “[T]he evidence should be weighed in the light most favorable to the verdict.” Id. (citation omitted). “This Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Langston v. State, 791 So.2d 273, 280 (¶14) (Miss.Ct.App.2001).
¶ 34. The jury in this case was presented with two different versions of the facts. “We will not disturb a jury’s finding on conflicting testimony where there is substantial evidence to support the verdict.” Taylor v. State, 744 So.2d 306, 312 (¶ 17) (Miss.Ct.App.1999) (quoting Allman v. State, 571 So.2d 244, 253 (Miss.1990)). It is not the function of this Court “to determine whose testimony to believe.” Id. (quoting Allman, 571 So.2d at 253).
¶ 35. Mitchell and Thomas both testified. They each stated their version of events. Thomas argues that even if the jury believed Mitchell’s version, the evidence still showed that Thomas acted in self-defense.
¶ 36. The Mississippi Supreme Court has said “[t]o make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or [the] defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be [imminent] danger of such design being accomplished.” Anderson v. State, 571 So.2d 961, 963 (Miss.1990) (citations omitted).
¶ 37. Furthermore, this Court has found that it was reasonable for a jury to conclude a defendant did not fear for his safety when evidence indicated the victim tried to flee. Knox v. State, 912 So.2d 1004, 1009 (¶ 22) (Miss.Ct.App.2005). Under Mitchell’s version of events, she had abandoned the conflict, dropped her weapon, and walked away when she was alerted to turn around. When she turned around, Thomas’s gun was pointed toward her. Mitchell then put her hands in front of her face defensively and Thomas shot her.
¶ 38. The evidence presented would allow the jury to conclude that Mitchell had abandoned the conflict, and like in Knox, there was no present or urgent danger to Thomas. The verdict indicates that the jury believed Mitchell’s version of events. Because there was substantial evidence in the record to support the jury’s conclusion that Thomas did not act in self-defense, the verdict is not against the overwhelming weight of the evidence.
¶ 39. Mississippi Code Annotated section 97-3-7(2)(b) (Rev.2006) says that *696 “[a] person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” Thomas admitted that she shot Mitchell in the hand. Taking this evidence in the light most favorable to the verdict, we find no error.
¶ 40. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.