## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00641-SCT

*CHARLES McDONALD a/k/a CHARLES W.*
*McDONALD a/k/a CHARLES WILLIAM McDONALD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/97 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | JEANNENNE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 7/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

**BEFORE PITTMAN, P.J., McRAE AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Charles McDonald was indicted in the Circuit Court of Jones County for the murder of Elijah Adams on January 22, 1997. He was convicted of manslaughter on April 14, 1997. McDonald was thereafter sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Aggrieved by the lower court proceedings, McDonald brings five separate assignments of error. We find that the lower court erred in failing to grant the "no retreat" jury instruction requested by the defendant, and thus, reverse and remand for a new trial. Accordingly, we address only the first two assignments of appeal, finding the final three assignments to be moot.

### ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION**

TO QUASH THE INDICTMENT FOR WANT OF THE WORD "DID."

**II. WHETHER THE TRIAL COURT ERRED IN DENYING A "NO RETREAT" INSTRUCTION.**

## FACTS

¶2. Charles McDonald, John House and Glenn Clinton stopped at the intersection of Bay and Pine Streets in Laurel, Mississippi on November 9, 1996 to allow Clinton to fetch a barrel from his uncle's house.

¶3. Across the street, behind a house in close proximity to McDonald's van, a number of men were drinking, gambling and engaging in general mischief. They had been doing so for "some hours." Chief among these congregants were Antonio Jones and Elijah Adams. Clinton re-entered the van which Jones had recognized as McDonald's. Jones approached the departing vehicle in order to settle a vendetta apparently prompted by his belief that McDonald had run Adams' cousin off the road a few weeks earlier. Jones was followed soon thereafter by Adams, shouting profanity and heated accusations. As expected, Adams' accusations led to threats of physical violence which culminated in Adams twice slapping McDonald, seated in the driver's seat, in the face, while Jones attempted to open the driver's side door. House testified that Jones extended his arm into his pants at some point during this sequence of events, as if reaching for a gun.

¶4. The force of Adams' blows knocked McDonald between the driver's and passenger's seats. McDonald recoiled to his original upright position with a pistol he had hidden between the seats for personal protection. In one quick motion, McDonald faced Adams, fired one fatal shot into his chest, and sped away.

¶5. House recalled the incident as follows:

> And Shawn [Jones] come to the van talking about he was gonna mess him up, using foul language and stuff - - you know - - they had a couple of words. About that time Cricket [Clinton] come around and got in the van and we're easing up the road, and he started talking about he was going to get the man and what he was gonna do to the man and stuff like that.

> So we're easing on up the road and about that time Pee Wee [Adams] jumped up from the card table and come out telling Shawn to take care of everything, that he had his back - -

> ***

> - - that he had his back and they were going to take care of Charles, they were going to do this and hurt him and stuff like that, you know. He kept on coming to the van and when he got close to the van, he reached into the van and slapped Mr. McDonald.

> ***

> He reached in and slapped him the first time, he pushed him back, and he jumped back in front of the van and then he reached in there again and slapped him again. He was trying to swing on him and Shawn was trying to open the door.

By that time, he reached in there and slapped him again and he fell over - - Mr. McDonald fell over, he come up, shot down downward like that, Shawn jumped toward the back, Pee Wee jumped toward the front. He pulls up and they were standing back up cussing, or whatever they was doing, and about that time a shot went off and it hit the van. We pulled on off. I laid down in the back and we went on off back to his house.

## I. WHETHER THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO QUASH THE INDICTMENT FOR WANT OF THE WORD "DID."

¶6. The grand jury indictment of McDonald reads as follows:

The Grand Jurors of the State of Mississippi, taken from the body of the good and lawful Jurors of said County, duly elected, empaneled, sworn and charged, at the Term aforesaid of the Court aforesaid, to inquire in and for the body of the County aforesaid, in the name and by the authority of the state of Mississippi, upon their oaths present: That Charles W. McDonald, in the Second Judicial District, Jones County, on or about the 09th day of November in the year of our Lord, 1996, in the County and State aforesaid, unlawfully, willfully and feloniously kill and murder one Elijah Adams, a human being, against the peace and dignity of the State of Mississippi.

¶7. McDonald, citing *Kelly v. State*, 204 Miss. 79, 36 So.2d 925 (1948), claims that the failure to precede the word "unlawfully" in this indictment with the word "did" renders the entire indictment unlawful and void. His strict reliance upon *Kelly* lacks persuasiveness.[1] "So long as from a fair reading of the indictment taken as a whole the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Henderson v. State*, 445 So.2d 1364, 1368 (Miss.1984).

¶8. The indictment in the case *sub judice* clearly charges Charles W. McDonald with the murder of Elijah Adams. It gives the date of the alleged crime. It charges that the crime occurred within the Second Judicial District of Jones County. Finally, it sets forth the requisite mental state for murder as "willfully."

¶9. In short, the indictment against McDonald is adequate under Rule 7.06. It notifies him of "the essential facts constituting the offense charged" in language which is "plain, concise and definite." Excluding the verb "did" from the indictment was mere oversight. This assignment of error is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING A "NO RETREAT" INSTRUCTION.

¶10. McDonald's proposed jury instruction D-8 was refused by the trial judge on the basis of being an incorrect summary of law. It reads as follows:

The court instructs the jury that while the danger which will justify the taking of another's life must be imminent, impending, and present, such danger need not be unavoidable except by killing in self-defense. The defendant, Charles McDonald, need not have avoided the danger to his person presented by the deceased, Elijah Adams and Antonio Jones and or others, by flight. Though Charles McDonald was on premises not his home, so long as Charles McDonald was in

a place where he had the right to be and was neither the immediate provoker or aggressor, he may stand his ground without losing the right of self-defense.

¶11. This Court has held that "a defendant is not deprived of the right to claim self-defense in a slaying even if he could have avoided the threat to his safety by fleeing." *Haynes v. State*, 451 So.2d 227, 229 (Miss.1984). In fact, *Haynes* itself held it error for the trial judge to have refused an instruction practically identical to the instruction offered here.[2] This Court revisited this issue in *Cook v. State*, 467 So.2d 203, 210-11 (Miss.1985), wherein we reaffirmed the well entrenched principle of *Long v. State*, 52 Miss. 23, 34 (1876):

> Flight is a mode of escaping danger to which a party is not bound to resort, so long as he is in a place where he has a right to be, and is neither engaged in an unlawful, nor the provoker of, nor the aggressor in, the combat. In such case he may stand his ground and resist force by force, taking care that his resistance be not disproportioned to the attack.

467 So.2d at 210 ( *quoting* *Haynes*, 451 So.2d at 229).

¶12. McDonald did not immediately instigate the fatal altercation in this case. Jones and Adams did. Additionally, House's testimony indicates that the van was actually moving at a snail's pace immediately preceding and during the shooting. The jury could have reasonably wondered why McDonald did not race away. The prosecutor emphasized this point time and again in his closing argument. "He had every means of just driving off and everything would have been fine. Charles McDonald could have left. Why didn't they go on? All he had to do was get out of the way."

¶13. In short, failure to instruct the jury regarding the defendant's failure to retreat was error. "Whenever, from the facts of the case, it appears that the defendant could have avoided the fatal difficulty only by precipitous retreat, but did not leave, if the other requisite factors are present as stated in *Long*, supra, then the defendant is entitled to [a no retreat] instruction." *Haynes*, 451 So.2d at 229. Such is the situation in the case at bar. Therefore, we reverse and remand for a new trial.

¶14. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND WALLER, JJ., CONCUR.**

1. We have previously footnoted the diminished strength of the line of older cases that require an "extremely strict interpretation be given criminal indictments." We reemphasize the deflation of *Kelly v. State*, 204 Miss. 79, 36 So.2d 925 (1948) and other pre-Rule 7.06 cases. See *Henderson v. State*, 445 So.2d 1364, 1368 n. 4 (Miss.1984).

2. The instruction in *Haynes* reads as follows:

> The court instructs the jury that while the danger which will justify the taking of another's life must be imminent, pending, and present, such danger need not be unavoidable except by killing in self-defense. The court instructs the jury that the accused, Bobby Lee Haynes, need not have

avoided the danger to his person presented by the deceased, John Mitchell, by flight. So long as the defendant was in a place where he had the right to be and was not the immediate provoker and aggressor, he may stand his ground without losing the right of self-defense.

*Haynes*, 451 So.2d at 229.