EDITH H. JONES, Circuit Judge,
dissenting:
This is a most unusual case in two ways. First, a federal habeas court credits a recanting witness—a close friend of the petitioner—-while faffing to explain why the court disbelieves the testimony of the police officer who denied that he threatened the witness or caused him to testify falsely. Second, although the witness recanted his testimony more than three years after the trial but well within the time allowed to pursue Mississippi post-conviction remedies, the petitioner could not find counsel who would offer the testimony to the state court.
The district court concluded that incompetence led to injustice and granted the writ. The panel has corrected the district court’s misapplication of procedural bar[1] doctrine, holding that whether or not Fair-man’s Mississippi habeas application was delayed by his lawyers’ inaction, there was no “cause” under Coleman for the procedural default. Nevertheless, the majority reviews Fairman’s procedurally defaulted claim on the merits, because it concludes that it is “more likely than not” that, “in light of the new evidence,” all reasonable jurors would accept Fairman’s self-defense theory and exonerate him of Jones’s murder. Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).
Despite the majority’s articulation of the proper standard, and our authority to apply de novo the “more likely than not” aspect of the Schlup test, see O’Dell v. Netherland, 95 F.3d 1214, 1249-50 (4th Cir.1996) (en banc), aff'd on other grounds, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), I respectfully disagree with the majority’s weighing of the probabilities. As Justice O’Connor’s necessary fifth vote reiterated in Schlup, the actual innocence gateway is reserved for “extraordinary case[s]” where there is not “any juror who, acting reasonably, would have found *648 the petitioner guilty beyond a reasonable doubt.” Schlup, 513 U.S. at 333, 115 S.Ct. 851 (O’Connor, J., concurring) (internal quotation omitted and emphasis added).[1] The majority concludes: “accepting Prew-itt’s testimony as true necessitates a finding that Fairman was actually innocent” (emphasis added).
The majority believes that, more likely than not, Fairman would have been acquitted had the jury been told by Prewitt that Jones approached Fairman’s truck wielding a knife. If Jones had a knife and was intending to repeat the day’s earlier altercation, a much closer case is made for Fairman’s self-defense. But I question whether it is a reasonable case.
First, no knife was ever found. It may be contended that because Jones walked home, he could have taken the knife with him and put it away. Prewitt says he did not tell Officer White about the knife, so White never looked for one. But the weapon was purportedly a long butcher knife, and Jones was hit very hard by Fairman — at least until he fell to the ground and posed no further threat. It seems most likely that Jones dropped the knife, and if this occurred, it surely would have been visible on the ground.
Second, the scene and events seem more consistent with either an ambush or a duel than with Mississippi’s liberal rule on self-defense. Fairman and Prewitt drove Fair-man’s truck, with lights off, behind the gas station. In the dim light, they somehow saw Jones approaching, bearing a butcher knife. Fairman left the safety of his truck, then returned to it to retrieve his weapon, a stick, and confronted a drunk, butcher-knife-wielding Jones. A reasonable juror might wonder: is it brave or foolhardy thus to defend against a butcher-knife attack? Or, alternatively, a reasonable juror could find that Fairman’s getting out of the truck to beat Jones with a stick like an ax handle was “disproportioned” force or went beyond merely “standing] his ground.” Haynes v. State, 451 So.2d 227, 229 (Miss.1984) (quoting Long v. State, 52 Miss. 23, 34 (1876)).
Compounding this fishy story, Fairman told Officer White, just after the incident, that he was tired of being picked on by Jones — a statement flatly inconsistent with a motive guided by immediate self-defense.[2]
Less important but still troubling is Prewitt’s recanting testimony — contradicting not only Fairman and Officer White but also the majority’s description of the facts — that Officer White came onto the scene when Jones was still on the ground and that Officer White told Jones to get up and go home.[3] If Prewitt is correct, of course, Officer White should have seen the knife, either on Jones’s person or on the ground. Fairman does not challenge Officer White’s testimony that he did not arrive until after the fight was over. (Indeed, at trial, Fairman and Prewitt both testified that Jones was gone by the time Officer White arrived.) But Fairman’s version — unlike Prewitt’s new one — leaves only two living men who might know whether there was a knife. It has been impossible to recover or examine that weapon ever since Prewitt filed his affidavit.
*649 Under the majority’s ruling, perhaps we will find out what all “reasonable jurors” would do with this case. I cordially disagree that, “more likely than not,” they will accept Fairman’s claim of self-defense.

.As a leading treatise explains: "[T]he 'actual innocence' test is extremely stringent.... The fact that the federal judge herself harbors [a reasonable] doubt, or that many rational jurors would do so, does not suffice as long as it is the case that other, differently disposed but still 'rational,' jurors probably would find the petitioner guilty beyond a reasonable doubt." 2 James S. Liebman and Randy Hertz, Federal Habeas Corpus Practice and Procedure § 26.4 at 1124 n. 15 (3d ed.1998).

. At trial, Fairman claimed he told Officer White that Jones had a knife, but even in his recanting testimony, Prewitt says Fairman told Officer White only that Jones "kept on messing with me, man," and "he kept coming to me, and I got up and I hit him with a stick.”

. Prewitt repeated this at least five times in his recanting testimony.