# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00869-COA

SHAQUIL ONEAL SANDS A/K/A SHAQUIL
SANDS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT:               03/07/2019
TRIAL JUDGE:                    HON. LISA P. DODSON
COURT FROM WHICH APPEALED:      HARRISON COUNTY CIRCUIT COURT,
                                FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:              JOEL SMITH
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 09/29/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Following a jury trial, Shaquil Sands was convicted of second-degree murder and

attempted murder.  On appeal, Sands argues that the jury was not properly instructed on the

issue of self-defense and that the evidence is insufficient to sustain his convictions.  We find

no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On February 27, 2016, Dijon McCorkle and Richard Doby went to the home of

Demario Sands (Demario) for McCorkle to get a haircut.  When they arrived, Demario's

girlfriend told them that Demario was not home. She called Demario, and Demario told them to meet him one street over at his mother's home.

¶3. While McCorkle and Doby were en route to Demario's mother's home, Demario called McCorkle and accused him of disrespecting Demario's girlfriend. McCorkle testified that Demario was hostile and that their conversation started to "get loud." McCorkle pulled the car over and told Demario that they could "talk like men." However, they continued "hollering at each other." Demario told McCorkle again to come to his mother's home, so McCorkle and Doby continued on to Demario's mother's home. McCorkle said he intended "to get to the bottom [of] whatever was going on."

¶4. When McCorkle and Doby arrived at Demario's mother's home, Demario was standing outside. When McCorkle got out of his car, he and Demario "instantly got back loud with each other." Shaquil Sands (Sands)—Demario's brother—and Lamarcus Jones then emerged from the house. Jones began walking toward McCorkle and Demario, which prompted Doby to get out of McCorkle's car. McCorkle testified that Sands "stayed back" by the house. Doby and Demario then exchanged words and got into a "tussle." No punches were thrown. According to McCorkle, Jones began walking toward Doby, and McCorkle thought Jones "was fixing to jump" Doby. McCorkle then "grabbed" Jones "around his stomach" to intervene. McCorkle testified that he struggled with Jones for only "seconds" before all four men—himself, McCorkle, Doby, and Demario—"[l]et go of each other" and "[s]tepped back from each other." But according to McCorkle, Sands then "bust[ed] up between them" and started shooting. Sands shot Doby once in the chest and shot McCorkle

2

four times. When the shooting finally stopped, Demario turned to Sands and asked, "[W]hy did you do that?" Sands then fled.

¶5. Sergeant Joe Sturm of the Harrison County Sheriff's Department responded to the scene. Doby was dead by the time Sturm arrived. McCorkle's car was locked, but Sturm could see a firearm inside the car. Sands's mother was present and "distraught." She told Sturm that Sands lived with her, and Sturm asked her to call Sands. Sands then returned to the scene. Sands denied that he was present when the shooting occurred and denied any knowledge of the shooting. However, Sands was arrested based on information obtained from McCorkle, who had been taken to the emergency room.[1] A Harrison County grand jury subsequently indicted Sands for first-degree murder and attempted murder.

¶6. At trial, Demario denied that he had invited McCorkle to his mother's home or ever agreed to cut McCorkle's hair. Demario confirmed that he and Doby only struggled briefly, that he was "getting the better of" Doby, and that no punches were thrown before Sands started shooting. Demario claimed that while he and Doby were struggling, he saw McCorkle "[g]rabbing his [car] door." Demario testified that he knew McCorkle owned a gun. But Demario also admitted that he did not see McCorkle with a gun on the day of the shooting and that he never told investigators that McCorkle reached for his car door. Demario testified that Sands shot McCorkle just as McCorkle was reaching for his car door; however, McCorkle denied that he ever reached for his car door. Sands then shot Doby while Doby was standing "right next to" Demario.

---

[1] McCorkle was paralyzed from the waist down and confined to a wheelchair as a result of the shooting.

¶7.    Jones testified that he was watching a basketball game on television at Sands's mother's house prior to the shooting. When McCorkle and Doby arrived, Demario went outside, and Jones soon heard arguing. Jones and Sands then went outside and saw Demario and Doby tussling. Jones testified that he "didn't fight or touch nobody" and feared for his safety. Jones claimed that while Demario and Doby were fighting, McCorkle pointed at him and Sands and said, "I got something for y'all." Jones claimed that McCorkle then reached for his car, at which point Sands shot McCorkle. Jones testified that he did not see Doby get shot.

¶8.    Dr. Mark LeVaughn performed Doby's autopsy. He testified that the trajectory of the bullet that killed Doby indicated that Doby was "bent over" in an "evasive posture" and trying to flee or avoid injury when he was shot. Dr. Scott Blackburn treated McCorkle and testified that McCorkle was shot twice in the back, once in the back of his arm, and once in his stomach.

¶9.    The court instructed the jury on self-defense, the Castle Doctrine, attempted murder, first-degree murder, second-degree murder, and manslaughter. The jury found Sands guilty of second-degree murder and attempted murder. The court sentenced Sands to concurrent terms of forty years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended, for second-degree murder, and forty-nine years in MDOC custody, with nineteen years suspended, for attempted murder. Sands filed a motion for judgment notwithstanding the verdict or a new trial, which the trial court denied, and a notice of appeal. On appeal, Sands argues that the jury was not properly instructed on the issue of self-

4

defense and that the evidence is insufficient to sustain his convictions.

ANALYSIS

### I. Jury Instructions

¶10.    On appeal, Sands alleges errors in several jury instructions. We review a trial judge's decision to give or refuse a jury instruction for an abuse of discretion. *Clayton v. State*, 106 So. 3d 802, 804 (¶5) (Miss. 2012). "When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed." *Rubenstein v. State*, 941 So. 2d 735, 784 (¶224) (Miss. 2006). "Reversible error will not be found if, when read together, the instructions correctly state the law and create no injustice." *Sneed v. State*, 31 So. 3d 33, 45-46 (¶39) (Miss. Ct. App. 2009). "In other words, if the instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001). "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue." *Harris v. State*, 861 So. 2d 1003, 1013 (¶18) (Miss. 2003).

### A. Jury Instruction No. 12 (S-6)

¶11.    Jury Instruction No. 12 (S-6) stated:

> The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must either be actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, unanimously find that the defendant acted in self-defense, then

5

it is your sworn duty to return a verdict in favor of the defendant.

Sands did not object to this instruction at trial. However, on appeal Sands argues that the instruction was deficient because it did not inform the jury that the State had the burden to prove that Sands did not act in self-defense.

¶12. The issue is waived because Sands failed to object to the instruction on any ground at trial. *Id.* The issue is also without merit. In *Bernard v. State*, 288 So. 3d 301, 309 (¶31) (Miss. 2019), our Supreme Court held that a similar instruction did not improperly shift the burden of proof. The Court stated that "the ultimate question is whether the jury knew from the collective instructions given to them that [the defendant] could be acquitted if [he was] acting in necessary self-defense." *Id.* at (¶32) (brackets and ellipsis omitted) (quoting *Harris*, 861 So. 2d at 1014 (¶21)). As explained below, the instructions in this case fairly instructed the jury on the issue of self-defense. Therefore, the trial judge did not commit any error, much less plain error, by giving this instruction.

### B.    Jury Instruction 15 (S-13)

¶13. Jury Instruction No. 15 (S-13) stated:

> The Court instructs the Jury that in the case of a mere affray or beating with the fist, it cannot be said that it is necessary for a third person to resort to firearms or to take human life for the purpose of protecting one combatant from being injured by the other, unless some special circumstances are shown to exist which make it necessary to kill to protect the life of the person assaulted.

The State offered this instruction, citing *Fortenberry v. State*, 213 Miss. 116, 56 So. 2d 56 (1952), as support. Indeed, the instruction quotes *Fortenberry*'s holding verbatim. *Id.* at 122, 56 So. 2d at 58. Sands did not object to this instruction either, but on appeal he asserts

6

that it improperly commented on the evidence, was argumentative, and misstated the law. This issue is also waived due to Sands's failure to object to the instruction at trial. *Harris*, 861 So. 2d at 1013 (¶18).

¶14. In the absence of a contemporaneous objection, Sands's "*only* avenue available for review [is] through the application of the plain error doctrine." *Green v. State*, 183 So. 3d 28, 30-31 (¶6) (Miss. 2016). The plain error doctrine applies only when there has "been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Swinney v. State*, 241 So. 3d 599, 605-06 (¶14) (Miss. 2018) (quoting *Hall v. State*, 201 So. 3d 424, 428 (¶12) (Miss. 2016)). "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." *Id.* at 606 (¶15) (quoting *Conner v. State*, 138 So. 3d 143, 151 (¶19) (Miss. 2014)).

¶15. In this case, the trial judge committed no "plain, clear, or obvious" error by giving this instruction. *Id.* In general, our Supreme Court has "repeatedly warned . . . attorneys against copying sentences from [appellate] opinions . . . into [jury] instructions." *Freeze v. Taylor*, 257 So. 2d 509, 511 (Miss. 1972). However, there is no precedent disapproving of this particular instruction, and it correctly states the holding of a relevant Supreme Court decision. In the absence of any "binding authority" on this issue, we cannot say that the trial judge committed "plain error" by giving this instruction. *Green*, 183 So. 3d at 32 (¶¶9-10).

C. **Jury Instruction No. 14 (S-8)**

7

¶16. Jury Instruction No. 14 (S-8) stated "that while a Defendant may stand his ground and resist force by force, the resistance or force used by the Defendant may not be disproportionate to the attack used by the victim." Sands argues that the instruction conflicts with the self-defense and no-duty-to-retreat provisions of the justifiable homicide statute because the statutory provisions do not mention proportionality. *See* Miss. Code Ann. § 97-3-15(1)(e)-(f) & (4) (Rev. 2014). Sands argues that it was improper to allow the jury to decide whether the force he used was disproportionate to the force used by his victims.

¶17. Under the justifiable homicide statute, a killing is justifiable when it is "committed by any person in resisting any attempt unlawfully to kill [him] or to commit any felony upon him[] or upon or in any dwelling" where has a right to be. *Id.* § 97-3-15(1)(e). A killing is also justifiable if it is committed in defense of one's self or others, there is "reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished." *Id.* § 97-3-15(1)(f). In either of these circumstances, the law further provides that if a person "is in a place where [he] has a right to be" and "is not the initial aggressor," then that person has "no duty to retreat before using deadly force." *Id.* § 97-3-15(4). In such a case, the defendant's "failure to retreat" shall not be considered "as evidence that [his] use of force was unnecessary, excessive or unreasonable." *Id.*

¶18. We conclude that Jury Instruction No. 14 correctly stated the law. While section 97-3-15(4) codifies "the 'no duty to retreat' rule," "it has always been the law in this state that one has no duty to retreat from an attack if he is in a place where he has a right to be and is not

8

the initial aggressor or provoker." *Newell v. State*, 49 So. 3d 66, 74 n.9 (Miss. 2010) (citing, inter alia, *Long v. State*, 52 Miss. 23, 34 (1876)).  But the right to stand your ground is not a right to use disproportionate force.  As the Supreme Court explained in *Long*,

> Flight is a mode of escaping danger to which a party is not bound to resort, so long as he is in a place where he has a right to be, and is neither engaged in an unlawful enterprise, nor the provoker of, nor the aggressor in, the combat. *In such case he may stand his ground and resist force by force, taking care that his resistance be not disproportioned to the attack.*

*Long*, 52 Miss. at 34 (emphasis added); *accord Craig v. State*, 660 So. 2d 1298, 1300 (Miss. 1995).  In addition, in *Thomas v. State*, 145 So. 3d 687, 690 (¶¶15, 18) (Miss. Ct. App. 2013), *cert. denied*, 145 So. 3d 674 (Miss. 2013), this Court concluded that a similar instruction "correctly stated the law" on this issue.

¶19.    Section 97-3-15(4) codifies the longstanding rule in Mississippi that a person who is in a place where he has a right to be and who is not the initial aggressor has "no duty to retreat"—and, further, that his "failure to retreat" shall not be considered "as evidence that [his] use of force was unnecessary, excessive or unreasonable."  Miss. Code Ann. § 97-3-15(4).  But, as the language of the statute indicates, even in cases in which this rule applies, the jury may still find that the defendant's use of force *was* "excessive." *Id.*  That is, in the language of Jury Instruction No. 14, the jury may find that the defendant's use of force was "disproportionate to the attack."  The statute simply provides that the jury may not consider the defendant's failure to retreat, *in and of itself*, "as evidence" that the defendant's use of force was excessive. *Id.*  Ultimately, whether the defendant's use of force was excessive is a question for the jury. *Tate v. State*, 784 So. 2d 208, 212 (¶16) (Miss. 2001).  We perceive

9

no conflict between Jury Instruction No. 14 and the statute. Therefore, the trial judge did not abuse her discretion by giving the instruction.

### D. Jury Instructions Nos. 7 and 9 (S-1A and S-11A)

¶20. Next, Sands argues that the trial judge erred by omitting the phrase "and not in necessary self-defense" from the elements instructions for Count I (first-degree murder) and the lesser-included offense of second-degree murder. Sands did object to this omission at trial. However, the trial judge refused to amend the instruction because there was no evidence that Sands shot *Doby*—as opposed to McCorkle—in necessary self-defense.[2] As the trial judge summarized, "[t]he evidence was that they had been fighting and either they had stopped, based on Mr. McCorkle's testimony, and they were all just standing facing each other or, based on [Demario's testimony], [Demario] was getting the better of Mr. Doby, and then they had stopped fighting and were standing there[.]" In response, Sands's counsel pointed to testimony that *McCorkle* threatened Sands and reached toward his car. However, the judge stated that such evidence "had nothing to do with Mr. Doby" or Count I of the indictment. The judge stated that she would grant Sands's request if there was "even just a whisper of evidence there, a scintilla of evidence." But Doby "was simply, by all accounts, standing there. He was not doing anything at the time he was shot."

¶21. Sands's argument on appeal fails for multiple reasons. First, the defendant's "right to jury instructions that present his theory of the case . . . is not absolute. The court may

---

[2] The judge ruled that Sands had presented some evidence to support his claim that he shot *McCorkle* in self-defense. Therefore, the judge granted Sands's request to amend the elements instruction for Count II of the indictment (attempted murder) to include the phrase "and not in necessary self-defense."

refuse an instruction [that] . . . is without foundation in the evidence." *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009) (quotation marks omitted). In this case, the trial judge correctly observed that there was no evidence that Sands shot Doby in self-defense—by all accounts, Doby was simply "standing there" when he was shot. Accordingly, Sands did not have a right to self-defense instructions with respect to Count I of the indictment.

¶22. Second, Jury Instruction No. 12, which is reprinted above, instructed the jury that a "killing" is "justifiable on the grounds of self-defense" and that it was the jury's "sworn duty" to acquit Sands if he acted in self-defense. Thus, the jury was instructed that the law recognized self-defense as a justification for a killing. The instruction was general in nature and applied to both the murder of Doby and the attempted murder of McCorkle. In *Harris*, *supra*, the Supreme Court held that "[i]t was not error to give an [elements] instruction that omit[ted] the words 'not in necessary self defense'" because the court "instruct[ed] the jury in a separate instruction that the killing would be justified if committed by the defendant in the lawful defense of his own person." *Harris*, 861 So. 2d at 1015 (¶28). The Supreme Court reasoned that there was no error because "[t]he instructions, when read in their entirety, properly instructed the jury" on the issue of self-defense. *Id.* The same is true here. Despite the complete lack of evidence that Sands killed Doby in self-defense, the jury was still instructed that it should find Sands not guilty if he acted in self-defense.

¶23. Finally, any error was clearly harmless based on the evidence presented. The phrase "and not in necessary self-defense" *was* included in the elements instruction for the attempted murder of McCorkle, and the jury found Sands guilty on that charge as well. As to

11

McCorkle, there was at least some evidence to support Sands's claim of self-defense, but the jury rejected that claim and found Sands guilty beyond a reasonable doubt. There is no reason that the jury would have reached any different result as to the killing of Doby given the comparative and complete lack of evidence that Sands shot Doby in self-defense. Accordingly, for all of the above reasons, this issue is without merit.

## II.     Sufficiency of the Evidence

¶24.    Sands's final argument on appeal is that the State presented insufficient evidence to convict him of second-degree murder and attempted murder. Specifically, Sands argues that the evidence was insufficient to overcome the Castle Doctrine's presumption that he reasonably feared imminent death or great bodily harm.[3] "When reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State." *Thomas v. State*, 277 So. 3d 532, 535 (¶11) (Miss. 2019). "We must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quotation marks omitted). "Under this standard, the State receives the benefit of all

_____

[3] The "Castle Doctrine," as codified, provides:

> A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling . . . if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling . . . or the immediate premises thereof . . . and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.

Miss. Code Ann. § 97-3-15(3). The trial judge gave Sands's proposed instruction based on the Castle Doctrine.

favorable inferences that may be reasonably drawn from the evidence." *Id.* (quotation marks and brackets omitted).

¶25. In this case, the State presented sufficient evidence for a rational juror to find Sands guilty beyond a reasonable doubt. To begin with, the evidence was conflicting as to whether the Castle Doctrine's presumption even applied. There was testimony that Doby and McCorkle struggled or tussled with Demario and Jones in the yard outside the house. But there was also testimony that Demario invited McCorkle to the house and that any fight had ended before Sands shot Doby and McCorkle. On the evidence presented, the jury could have found that Doby and McCorkle had not entered or attempted to enter the dwelling "unlawfully and forcibly." Miss. Code Ann. § 97-3-15(3). If the jury so found, then the Castle Doctrine presumption did not apply.

¶26. Moreover, even if the jury found that the presumption did apply, the State presented sufficient evidence to overcome it and Sands's claim of self-defense. Again, there was evidence that any fight had subsided before Sands shot Doby and McCorkle. There was evidence that Doby and McCorkle were standing passively in the front yard when they were shot. Furthermore, neither victim had a gun when he was shot—only Sands was armed. Dr. LeVaughn testified that Doby was shot while he was trying to flee or avoid injury, and McCorkle was shot four times, including twice in the back and once in the back of his arm. This evidence all weighs against Sands's claim of self-defense.

¶27. "[T]he jury is the ultimate judge of whether the defendant acted in a manner to justify self-defense." *Webster v. State*, 817 So. 2d 515, 519 (¶13) (Miss. 2002). Viewing the

evidence in the light most favorable to the State, a rational jury could have found beyond a reasonable doubt that Sands did not act in self-defense and that Sands was guilty of second-degree murder and attempted murder. Therefore, the evidence is sufficient to support Sands's convictions.

## CONCLUSION

¶28. The jury was fairly instructed on Sands's claim of self-defense. In addition, the State presented sufficient evidence for the jury to find, beyond a reasonable doubt, that Sands did not act in self-defense and was guilty of second-degree murder and attempted murder.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**